Lewis N. Stoddard, ISB No. 7766
ALDRIDGE PITE, LLP
13125 W. Persimmon Lane, Suite 150
Boise, ID 83713
Telephone (619)-326-2404
Facsimile (858) 726-2404
lstoddard@aldridgepite.com

Kaleena M. Beck
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, ID 83703
Telephone 208-384-8588
Facsimile 208-853-0117
kaleena@aldridgepite.com

*Attorney for Trustee*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

In Re:

KA INVESTMENTS, INC.

Debtor

Case No. 17-00495-TLM
Chapter 7

### JOINT MOTION FOR SUBSTANTIVE CONSOLIDATION

COMES NOW, Noah G. Hillen (the "Trustee"), the chapter 7 bankruptcy trustee for the estate of KA Investments, Inc. (the "Debtor"), by and through his counsel of record Lewis N. Stoddard of the law firm of Aldridge Pite, LLP, and Roberta M. Leatham in her personal capacity and as the court appointed conservator of Rodney Allen, an Incapacitated Person (the "Conservator"), by and through her counsel of record Kaleena M. Beck of the firm Angstman Johnson (collectively the "Movants"), and hereby request that the Court exercise its equitable power and enter an order substantively consolidating the bankruptcy estate of KA Investments, Inc., with the non-debtor estate of Rodney Allen.

I.  **BACKGROUND**

   A.  <u>General Factual Background</u>

From approximately 2009 to April 2017, Rodney Dean Allen operated a Ponzi Scheme whereby he fraudulently offered and sold securities to both Idaho residents and residents of other states raising over seven million dollars from approximately 70 individual investors. Allen solicited investments while using the name KA Investments and/or KA Investments, Inc., though Idaho Secretary of State Records reflect that he did not actually form KA Investments, Inc., until January 25, 2013. Allen did file a Certificate of Assumed Business name to transact business in the name of "KA Investments" generally on May 13, 2011.

Allen told investors that he could provide returns of around 2% to 3% per month, or annual returns of 24% to 36% and advised investors that he would pool their money and "trade the market in stock options, S&P 500 futures, DOW futures, NASDAQ futures, oil, gold and the FX [foreign] market currency pairs." Allen also advised his investors that only a portion of their money would be invested at any given time and that all investments would be pulled out of the market at the end of each trading day, thereby avoiding large downturns in the market. Allen advised investors that he would only take a commission based off of returns to his investors. State differently, Allen advised investors that he would only make money if their investments made money.

Allen's representations induced investors to invest with him because they expected above average profits from his trading activity which they were led to believe was low risk. Moreover, where Allen's commissions were based upon achieving positive investment returns, investors believed that Allen's commission structure was an incentive for Allen to succeed. Allen prepared and sent fabricated periodic account statements to each of his investors showing the

promised rates of return. The fictitious returns induced many investors to recommend him to others who in turn invested.

Allen failed to inform investors he, his d/b/a KA Investments, and KA Investments, Inc., were not registered or licensed to sell securities or commodities in the State of Idaho or elsewhere.  Allen also failed to advise investors that their funds would be co-mingled together with other investor funds and deposited into general checking accounts that Allen had set up at Idaho Independent Bank and Wells Fargo Bank, N.A., that he intended to use investor money for his own personal use in amounts unrelated to the commission structure he promised, or that he would use money from one investor to pay other investor's on their fictitious returns so as to perpetuate the illusion that investor money could be safely withdrawn at any time.

In reality, Allen set up multiple bank accounts both in his own name as well as in the name of KA Investments, as a sole proprietorship.  Bank account records show that Allen provided Idaho Independent Bank and Wells Fargo Bank, N.A. with an EIN that according to the IRS, for tax purposes, identified the entity as a partnership, but which Allen listed as a sole proprietorship.  Ultimately, Allen never set up a bank account for Debtor.  Rather Allen deposited investor funds into the two d/b/a KA Investment accounts he operated at Idaho Independent Bank and Wells Fargo Bank, N.A.

Allen would then transfer some of investor funds to his own personal checking accounts and/or savings accounts.  From there, Allen deposited only a portion of investor funds into two online trading platforms, where he incurred substantial losses.  Again, records indicate that the trading accounts that Allen used were all set up in Allen's name personally or his d/b/a and not in the name of KA Investments, Inc.  The investor funds not transferred from Allen's personal checking account into the online trading platforms were then used to pay for Allen's personal

expenses including but not limited to mortgage payments, car payments, credit card payments, household bills, ATM withdraws, and dining expenses. Similarly, investor funds that Allen left in the KA Investment checking accounts were also spent on similar personal expenses.

Allen does not appear to have taken any measures to separate or segregate investor funds or to separately account for or track investor funds beyond preparing and distributing fictitious monthly statements he was generating and providing to investors.

According to a recent Verified Complaint filed by the State of Idaho, Department of Finance, Securities Bureau, by April 2017, Allen had gathered somewhere between $6,893,268.00 and $7,617,623.19 in investor funds and returned somewhere between $2,028,479.00 and $2,544,655.34 back to investors leaving between $4,864,789.00 and $5,072,967.85 unaccounted for.[1] According to the Complaint, Allen converted nearly $2,900,000.00 of investor money for his own personal use.

B.  Relevant Procedural Background

When Allen became aware that he was being investigated by the Idaho Department of Finance, he disappeared and his whereabouts are presently unknown. Following his disappearance, an involuntary petition was filed against the Debtor on April 25, 2017. The following date, April 28, 2017, Trustee was appointed as the interim Chapter 7 trustee for the bankruptcy estate of Debtor pending adjudication of an involuntary bankruptcy petition.

On April 28, 2017, Trustee filed an Emergency Motion to Preserve Bank Accounts at Idaho Independent Bank held in the name of Rod D. Allen d/b/a KA Investments and/or Rodney D. Allen d/b/a KA Investments. That same day, an Order Granting Emergency Motion to Preserve Bank Accounts at Idaho Independent Bank was entered by the court ordering Idaho Independent Bank to

---

[1] The difference in amounts is based upon whether bank account records are used or fictitious investor statements are used.

preserve any and all bank accounts in the name of Rod D. Allen d/b/a KA Investments and/or Rodney D. Allen d/b/a KA Investments, pending further order from the Court. On May 24, 2017, this Court entered an Order for Relief.

Following Allen's disappearance, on May 8, 2017, Allen's wife Roberta Leatham was appointed as the temporary conservator of Allen's estate in order to "maintain the *status quo* of the incapacitated person's estate," in Case No. CV01-17-08357 entitled *In the Matter of the Guardianship and Conservatorship of Rodney Allen, an Incapacitated Person,* filed in the Fourth Judicial District of that State of Idaho, In and for the County of Ada ("Conservatorship Action"). On June 1, 2017, a Stipulation to Preserve TD Ameritrade Account was filed with the Court whereby Trustee and Conservator stipulated and agreed to the entry of a Court order authorizing TD Ameritrade to preserve the funds in the TDA account pending further order from the Court. An Order was entered by the Court the same day, preserving the account at TD Ameritrade held in the name of Rod Allen with account number ending in 3579.

Roberta Leatham was appointed conservator on August 29, 2017 in the Conservatorship action. In connection therewith, Ms. Leatham prepared a Conservator's Accounting and Conservator's Inventory and Financial plan valuing the Net Asset value of Rodney Allen's estate somewhere between $656,823.57 and $696,048.00.[2]

C.    Competing Claims/Suits

On January 25, 2018, the State of Idaho, Department of Finance, Securities Bureau, filed a Verified Complaint against Rodney Dean Allen, individually and dba KA Investments and KA

---

[2] This amount includes Rod Allen's Social Security Benefits which Trustee has agreed to allow Ms. Leatham to retain and use for her own personal expenses as part of a separate Stipulation and Motion for Compromise.

Investments, Inc., for various securities violations, misrepresentation and conversion.[3] Through the lawsuit, the State of Idaho seeks an order of restitution for investors, a civil penalty for each violation of Idaho's Uniform Securities Act in an amount no less than $40,000 in favor of the State of Idaho, Department of Finance, Securities Bureau, and an award of attorney fees.

Additionally, two investors, Jack and Sharon Archer, have filed an Adversary Action Case No. 17-06028-TLM, which only names the Trustee of the Estate of KA Investments, Inc., and otherwise fails to include Rod Allen personally or Rod Allen d/b/a KA Investments. The Adversary Action seeks to impose either a resulting trust or express trust over $182,000.00 that are held in the Idaho Independent Bank Account, which as noted above, is not a corporate account of the Debtor.

## II.    LEGAL STANDARDS FOR SUBSTANTIVE CONSOLIDATION

"Substantive consolidation is an uncodified, equitable doctrine allowing the bankruptcy court, for purposes of the bankruptcy, to 'combine the assets and liabilities of separate and distinct—but related—legal entities into a single pool and treat them as though they belong to a single entity.'" *In re Aroonsakool*, 2014 WL 1273696 *8 (B.A.P. 9th Cir. 2014), quoting *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000). Two broad themes have emerged from substantive consolidation case law: in ordering substantive consolidation, courts must (1) consider whether there is a disregard of corporate formalities and commingling of assets by various entities; and (2) balance the benefits that substantive consolidation would bring against the harms that it would case. *In re Bonham*, 229 F.3d at 765 (citations omitted). No uniform guideline for determining when to order substantive consolidation has emerged. Rather, only through a

---

[3] The case is entitled *State of Idaho, Department of Finance, Securities Bureau, Plaintiff, vs. Rodney Dean Allen, individually and dba KA Investments; KA Investments, Inc., Defendants,* Case No. CV01-18-02013 filed in the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County.

searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors. *Id*. (citations omitted).

In the Ninth Circuit, an order granting substantive consolidation "requires consideration of two factors":

> (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.

*In re Bonham*, 229 F.3d at 766. This Court recently described these two factors as "two overarching factors" that were "distilled" from several other factors. *In re Clark*, 525 B.R. at 127-28. "In either case, the bankruptcy court must in essence determine that the assets of all of the consolidated parties are substantially the same." *In re Bonham*. at 771.

> The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and, the creditors of the consolidated entities are combined for purposes of voting on reorganization plans. *See In re Augie/Restivo*, 860 F.2d at 518. Without the check of substantive consolidation, debtors could insulate money through transfers among inter-company shell corporations with impunity.

*In re Bonham*, 229 F.3d at 764.

The moving party has the initial burden of showing either one of the *Bonham* factors are met. *In re Aroonsakool*, 2014 WL 1273696 at *8 (citation omitted). With regard to the first factor, once the moving party establishes a close interrelationship between debtors and the non-debtor entities, there is a presumption that creditors did not rely on their separate credit. *Id*.; see also *In re Clark*, 2014 WL 7409086 at *15 (Bankr. D. Idaho Dec. 30, 2014). The burden of proof then shifts to the parties opposing substantive consolidation to show otherwise. *Id*., citing *In re Bonham*, 229 F.3d at 767.

With regard to the second factor, consolidation is justified where "the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of

any net assets for all the creditors" or where no accurate identification and allocation of assets is possible. *In re Bonham*, 229 F.3d at 766, quoting *In re Augie/Restivo*, 860 F.2d at 519.

Here, while the Movants need only demonstrate that one of the *Bonham* factors is present, both are satisfied in this case. Allen disregarded corporate formalities when he solicited investments from investors using his d/b/a KA Investments and KA Investments, Inc. interchangeably as if they were the same entity. Allen then comingled investor funds deposited with the Debtor into general personal checking accounts that Allen had set up for his d/b/a following which he would then shift investor funds to his own personal checking account and personal trading accounts. Allen's continual shifting of investor funds amongst several of his own personal accounts including his own personal trading accounts and then using all of the accounts to pay for personal expenses weigh in favor of substantive consolidation.

Moreover, with the recently filed lawsuit by the State of Idaho which appears to assert competing claims against the assets of Rod Allen's estate as well as the pending Adversary Action seeking to impose a trust over funds held in accounts set up in the name of KA Investments and not accounts in the name of the Debtor, the close interrelationship warrants consolidation for the benefit of all creditors. It is the nature and extent of the entangled business affairs of the Debtor and Rodney Allen personally and d/b/a KA Investments over almost a decade of running a Ponzi scheme that warrants consolidation for the benefit of all creditors. Additionally, substantive consolidation would bring the State of Idaho's lawsuit within the umbrella of the automatic stay thereby eliminating the need to deal with multiple lawsuits aimed at maximizing recovery for the investors.

### III.    CONCLUSION

The Movants request that the Court enter an order substantively consolidating the

bankruptcy estate of the Debtor and the Estate of Rodney Allen.

Dates this 1st day of May, 2018.

                                          /s/ Lewis N. Stoddard
                                      LEWIS N. STODDARD
                                      Attorney for Trustee

Dates this 1st  day of May, 2018.

                                          /s/ Kaleena M. Beck
                                      KALEENA M. BECK
                                      Attorney for Roberta Leatham individually and as Conservator for Rodney Allen, an Incapacitated Person

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 1, 2018, I filed the foregoing Joint Motion for Substantive Consolidation electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**U.S. Trustee**
ustp.region18.bs.ecf@usdoj.gov

Kimbell D. Gourley
kgourley@idalaw.com

Noah G. Hillen
ngh@hillenlaw.com

Robert A. Faucher
rfaucher@hollandhart.com

Kaleena Beck
kaleena@angstman.com

Joseph B. Jones
Joseph.jones@finance.idaho.gov

Jed W. Manwaring
jmanwaring@evanskeane.com

Randall J. French
rfrench@rferenchlaw.com

AND, I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants by first class mail, postage prepaid:

KA Investments, Inc.
308 N. 15th Street
Boise, ID 83702

Scott Pederson
POB 601
Bothell, WA 98041

Janet Ouderkirk
267 S. Aster Ave.
Star, ID 83669

                                              /s/ Lewis N. Stoddard

Dated: May 1, 2018