Lewis N. Stoddard, ISB No. 7766
ALDRIDGE PITE, LLP
13125 W. Persimmon Lane, Suite 150
Boise, ID 83713
Telephone: (619) 326-2404
Fax: (858) 726-6254
lstoddard@aldridgepite.com

Attorney for Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>KA INVESTMENTS, INC.<br><br>        Debtor<br>―――――――――――――――――<br><br>JACK and SHARON CHRISTINE ARCHER,<br><br>        Plaintiffs/Counter-Defendants,<br><br>Vs.<br><br>NOAH HILLEN, as Chapter 7 Trustee of the estate of KA Investments, Inc.,<br><br>        Defendant/Counter-Plaintiff. | Chapter 7<br><br>Case No. 17-00495-TLM<br><br>Adv. No. 17-06028-TLM<br><br>**MEMORANDUM IN RESPONSE TO PLAINTIFFS/COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

From 2009 until his disappearance on or about April 19, 2017, Rodney D. Allen ("Allen") operated a massive investment scheme under the dba KA Investments and as principal of KA Investments, Inc. ("KA"). Plaintiffs/Counterdefendants Jack and Sharon Archer (hereinafter "Archers") are amongst approximately 70 investors who were duped in the KA scheme. Ultimately, the Archers had the fortune/misfortune of being the last to invest money in

the scheme before Allen disappeared and KA Investments, Inc. was forced into involuntary bankruptcy.

Because they were the last to invest the Archers seek to minimize their losses by attempting to elevate their claims above those of other similarly situated creditors merely because they were duped into investing at the end of the scheme, rather than the beginning. Specifically, the Archers seek return of an investment of $182,000.00 that they made the day before Allen went missing under the theory that their investment was to be held in either an express trust or a resulting trust and therefore those funds are not property of the bankruptcy estate. The Archer's further contend that they can trace their funds by employing the lowest intermediate balance test.

The main question presented by the Archers' motion for summary judgment is whether the Archers' $182,000 investment constitutes property of the estate where it was deposited into a comingled bank account comprised entirely of other similarly situated creditor/investor funds. As is discussed below, the Court should deny the Archer's Motion for Summary Judgment.

First, the undisputed facts show no express trust was created and no resultant trust can exist where there is an express agreement to the contrary. Second, even assuming there was a trust relationship created, the Archers' cannot strictly trace their trust property where they are similarly situated to the other 68 investors who were similarly duped and operated under the same or similar relationship with Allen/KA as the Archers and where the funds over which the Archers seek to impose a trust is comprised entirely of creditor funds.

### II.     STANDARD OF REVIEW

> Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as [*7] a matter of law." Civil Rule 56(c) ; *Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d

702, 707 (9th Cir. 2008); *Leimbach v. Lane (In re Lane),* 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 992 (9th Cir. 2001)). Inresolving a summary judgment motion, the Court does not weigh evidence, but, rather, determines only whether a material factual dispute remains for trial. *Leimbach,* 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir. 1997)). In making this determination, the Court views the evidence in the light most favorable to the nonmoving party. *McSherry v. City of Long Beach,* 584 F.3d 1129, 1135 (9th Cir. 2009). In addition, all justifiable inferences are to be drawn in favor of the nonmoving party. *Id.*

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.),* 255 B.R. 588, 597 (Bankr. D. Idaho 2000) [*8] (citing *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir. 1998)).

*See Bankr. Estate of Wing Foods, Inc. v. CCF Leasing Co.* (*In re* Wing Foods), 2010 Bankr. LEXIS 114, *6-8, 52 Bankr. Ct. Dec. 176 (Bankr. D. Idaho 2010.)

### III.    ARGUMENT

This action demonstrates the evil of substantial frauds like the one perpetrated by Rod Allen/KA Investments, Inc., which pits its victims against one another.  Where the funds remaining when the fraud is uncovered are insufficient to make all of the creditors/victims whole, the victims are left to argue amongst themselves and the present case is of no exception.

Here, despite being similar situated to the other 68 investors similarly duped into investing money with Allen/KA, the Archers seek to elevate their claims above everyone else to try to recover more money than they would otherwise be entitled under a pro rata distribution merely because they had the fortune/misfortune of investing in the KA investment scheme last. Ultimately, the Archers' claims fly in the face of one of the strongest policies behind the bankruptcy laws, which is equal pro rata distribution amongst similarly situated creditors i.e.… the other investors duped in the KA scheme.  Taking the Archers' arguments to their logical end, all of the debtor's funds contained within it's general checking accounts case should be

impressed with claims of nearly 70 different trusts, which because there are insufficient funds to make the entire creditor class whole, would serve no constructive purpose. Further, using the lowest intermediate balancing test fiction here would result in "last in first out" distribution of investor money held by the debtor, allowing those who were duped last to recover their investments at the cost of those who were duped first. Ultimately, the Archers' summary judgment motion should be denied where there no express trust or resultant trust existed and where, even if a trust did exist, the Archers cannot strictly trace their $182,000.00 investment once it was comingled with other similarly situated creditors' funds.[1]

### A. Property of the Estate

Section 541 of the Bankruptcy code provides for the creation of the bankruptcy estate upon the filing of a bankruptcy petition and includes within the estate all legal or equitable interest of the debtor in property wherever located and by whomever held. *See* 11 U.S.C § 541; *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-05 (1983). Within the broad definition of property of the estate, courts have held that "money held in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate." *See Frontier Pepper's Ferry, LLC v. LandAmerica 1031 Exchange Servs. (In re Landamerica Fin. Group, Inc.),* 2009 Bankr. LEXIS 4133 (Bankr. E.D. Virginia 2009); *citing to In re Amdura Corp.,* 75 F.3d 1447, 1451 (10th Cir. 1996); *Elsaesser v. Gale (In re Salt Lake City R.V., Inc.),* No. 95-03264-7, 1999 WL 33486709, at *4 (Bankr. D. Idaho, 1999)("[m]oney in a bank account under the debtor's control presumptively constitutes property of the debtor's estate…").

---

[1] F.R.C.P. 56(f)(1), the court can and should grant summary judgment in favor of the Trustee where the Archers cannot strictly trace their trust funds without employing a tracing fiction which is inappropriate as a matter of equity based upon the facts of this case. The Archers briefing acknowledges that case law imposes a "strict tracing standard," and thus by the time this matter is heard, will have had a reasonable time to respond to how or why their use of the Lowest Intermediate Balance Rule is equitable, or to concede that without the use of such rule they cannot sufficiently trace their trust funds.

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**　　　　4 | P a g e

When property is held by a debtor in trust for a beneficiary, the trust property belongs to the beneficiary and not the debtor and does not become part of the debtor's bankruptcy estate. *Gugino v. Canyon County (In re Bujak),* 2012 Bankr. LEXIS 3689; Bk Case No. 10-03569-JDP, Adv. Pro. 11-06038-JDP (Bankr. D. Idaho 2012). Whether a trust exists in a federal bankruptcy proceeding is a matter of state law. *Id.* However, even though state law controls……, it must be applied in a manner consistent with federal bankruptcy policy. *Elliott v. Burnb,* 356 F.2d 749, 755 (9th Cir. 1966.)

B. **No Express Trust Exists.**

The Archers seek summary judgment on their claim that an express trust existed between themselves and KA[2] both by "their written agreement and their conduct;" however, in so arguing, the Archers overlook a number of relevant facts including their express agreement to the contrary, their agreement that their funds would be comingled with other investor funds, and that their relationship with the debtor is identical and/or nearly identical all of the other investors/creditors. When all of the material facts are considered, it is clear that summary judgment in favor of the Archers is improper.

As correctly cited by the Archers in their brief, state law determines whether a trust exists in a federal bankruptcy proceeding. *Gugino v. Canyon County (In re Bujak),* 2012 Bankr. LEXIS 3689; Bk Case No. 10-03569-JDP, Adv. Pro. 11-06038-JDP (Bankr. D. Idaho 2012). Idaho law provides that an express trust may be established either orally or in writing and it is only created

---

[2] It is worth nothing that nowhere in the Archers' present motion is there any discussion as to who they believe their express trust or resultant trust was with. The Archers filed their Complaint as against the Estate of KA Investments, Inc. only and did not include any claims in their adversary complaint as against Rodney D. Allen or Rodney D. Allen d/b/a KA Investments. The implication then is that the Archers believe they formed a trust relationship with KA Investments, Inc.; however, the undisputed facts show that KA Investments, Inc., never formed any bank accounts or investment accounts for purposes of handling investor funds. Rather, investor funds were deposited directly into banking accounts set up by RA under the d/b/a KA Investments, which he listed as a sole proprietorship. It was only after the filing of the Archers' Adversary Complaint, the debtor estate of KA Investments, Inc. were substantially consolidated with the non-debtor estate of Rodney D. Allen.

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**      5 | P a g e

if the settlor manifests and intention to create a trust; however, there must be certainty as to the property to be subjected to the trust, the identity of the beneficiaries, and the manner in which the trust fund is to be administered and used. *Estate of Hull v. Williams,* 126 Idaho 437, 443 (Ct. App. 1994.) The burden of proof lies with the party asserting the existence of a trust which must be shown by clear and satisfactory, or clear and convincing evidence. *Vaugh v. First Fed. Sav. & Loan Ass'n,* 85 Idaho 266, 378 P.2d 820 (Idaho 1963). Ultimately,

> An express trust is only created if the purported trust settlor properly manifests an intention to create a trust. While no particular words or conduct are required, the settlor must evidence his intention that, upon transferring the property to the trustee, the trustee is to hold the property for the benefit of a third party beneficiary. *Garner v. Andreasen,* 527 P.2d 1264, 1266 (Idaho 1974). While no specific words are required, the creation of an express trust requires some expression that establishes, with certainty, the property to be subjected to the trust and the identity of the beneficiaries. The expression must also identify trustee's fiduciary duties, and establish the manner in which the trust property is to be administered and used. *Bliss v. Bliss,* 119 P. 451, 454 (Idaho 1911).

*See Gugino v. Canyon County (In re Bujak),* 2012 Bankr. LEXIS 3689; Bk Case No. 10-03569-JDP, Adv. Pro. 11-06038-JDP (Bankr. D. Idaho 2012).

Here, the facts do not support the Archer's contention that there exists an express trust, or at a minimum a question of fact remains that precludes the entry of summary judgment in the Archers' favor. Specifically, the undisputed facts show that the Archers were presented with and signed a number of documents when they initially opened their account with KA on January 6, 2016, prior to investing.[3] Those documents consisted of an account application, a confidentiality statement, and a Beneficiaries – Transfer on Death Form (collectively referred to as "Account Agreement"). (Trustee Aff., Ex. A.) Of significance are the express terms within the Beneficiaries – Transfer on Death From, which provided in no uncertain terms that:

---

[3] *See* Archer Dec., ¶ 16, Ex. A; *see* Trustee Dec., Ex. A, pgs. 9-10, 12, and 15.

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**      6 | P a g e

> …This Agreement does not constitute a trust, and KA has no fiduciary duty as a trustee under the Agreement to the account holder, any beneficiary under the Agreement or any other third party.
>
> This Agreement supplements and does not replace any of the terms and conditions of the applicable Customer Agreement for the Account… If the Agreement should conflict with any such other terms and conditions, the Agreement will control…

(Archer Dec., Ex. A, pg. 5, ¶¶1-2; Trustee Dec., Ex. A, pg. 17, ¶¶ 1-2.). In executing the Account Agreement, the Archers acknowledged that they had received and agreed to the foregoing terms. (Archer Dec. Ex. A, pg. 4; Trustee Dec. Ex. A, pg. 16.) While the Archers spend ample time discussing what they believed, expected, intended or didn't intend, or knew or didn't know, the Archers have presented no evidence addressing or refuting their express agreement disclaiming any trust or fiduciary relationship which they signed prior to making any investments.[4]

In *Frontier Pepper Ferry, LLC v. LandAmerica 1031 Exchange Servs. (In re Landamerica Fin. Group, Inc.),* 2009 Bankr. LEXIS 4133 (Bankr. E.D. VA 2009), the bankruptcy court found that funds held by debtor in connection with various § 1031 exchanges and deposited and comingled into a single operating account were not excluded from property of the estate under § 541(d) under the theory that they were part of an express or resulting trust. The court analyzed Virginia Trust law, and of significance noted that the debtors had signed specific agreements that contained an absence of any language that the partied intended to create a trust, but contained language that actually evidenced an intent not to do so. *Id.,* 2009 Bankr. LEXIS 4133, *28-29. The court noted that a trust necessarily requires the establishment of fiduciary duties and that because the subject agreements expressly limited the scope of the duties

---

[4] Parole evidence is inadmissible to prove the existence of supplemental terms when a written contract is "clear and unambiguous." *See United States v. Ajugwo,* 82 F.3d 825, 928 (9th Cir. 1996); *see also Robinette v. Robinette,* 4 Va. App. 123, 128 (Ct. App. VA 1987)(holding that a party cannot introduce parol evidence to show the existence of a trust if it would defeat or contradict the terms of an express agreement.)

owed, it eliminated any argument that there was a duty to act as a fiduciary for the Plaintiffs. *Id.,* at *31; *citing to Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,* 2000 U.S. App. LEXIS 23185, 2000 WL 1288317, at *4 (4th Cir. 2000)(holding that no fiduciary duties exist where the plaintiff 'expressly consented (in the Consent Agreement) to the [defendants'] disclaimer of any fiduciary relationship toward it.) Thus, the court noted that in light of the express agreement, no duties, including fiduciary duties could be implied or imposed by operation of law. *Id.*

Further cutting against the Archers' claim of express trust is the fact that the written documents upon which the Archers rely informed them that their funds were to be comingled with other investor funds in the same account.[5] Moreover, the Archers funds were in fact comingled with other investor funds into the same general checking account and to the extent traded, into the same online trading platforms. (Miller Aff., ¶ 13-14, 16, 19.) The Archers admit that they had no "input on the investing methods, techniques or decisions," and "believed" they had no authority to direct or control Allen's/KA's activities in any way, but instead gave Allen full autonomy notwithstanding the fact that Allen/KA was never licensed to sell securities which the Archers could have verified through the Idaho Department of Finance prior to investing but chose not to.[6] Moreover, the undisputed facts show that Allen/KA never treated investor funds as trust funds but rather he transferred and used funds indiscriminately as he chose fit. (Miller Aff., ¶ 19.)

---

[5] The monthly account statements that the Archers' and other investors received provided that "Clients will be listed as beneficiaries to their portions of **the account,**" and that "Net Gain Distribution is equal for all clients participating **in the account."** The foregoing statement indicate that the Archers knew or should have known that their investment funds were being pooled with other investor funds into a singular account. (Archer Dec., Exs. B-H; *see also* Trustee Aff., Ex. A, Verified Complaint, ¶ 7 ("Allen told his investors that he would pool their money…").)

[6] (Archer Dec., ¶¶ 9-12); *see also* www.finance.idaho.gov/securities/securitieslicense.aspx where investors such as the Archers could have verified whether Rod Allen and/or KA Investments, Inc. were properly licensed with the State of Idaho.

Further lacking from the facts of this case is any evidence establishing with any certainty what purported fiduciary duties the Archers contend Allen/KA owed them, or the manner in which the purported trust funds were to be administered and used. Rather, all of the facts that the Archers rely upon are statements as to what they believed, what they intended, or what they understood (Archer Dec., ¶¶ 11-14, 20-21, and 34); however, subjective belief and intent are insufficient to establish an express trust under Idaho law.  Instead, beyond the Archers' belief, understanding, or intentions, there must have been some **outward expression** by the Archers that establishes, with certainty, the property to be subjected to the trust, the identity of the beneficiaries, the identification of the trustee's fiduciary duties, and the manner in which the trust property is to be administered and used. *Bliss v. Bliss,* 119 P. 451, 454 (Idaho 1911). Here, the undisputed facts, including the all of the written documents upon which the Archers rely, advised that the Archers' funds would be pooled/comingled, with no limitations on the types of investments the method or manner of investment, and ultimately fail to touch on any purported fiduciary duties owed by Allen/KA.  In fact, the Account Agreement expressly disclaims any trust and fiduciary duties.

Based upon the foregoing, summary judgment is inappropriate in favor of the Archer's on their claim that an express trust existed that would remove their last investment of $182,000 from the estate in this matter.

C. **Neither the Equities Nor the Undisputed Facts Warrant the Imposition of a Resulting Trust.**

The Archers argue that in the alternative, a resulting trust exists; however, neither the facts nor the equities in this case warrant the imposition of a resulting trust where the parties entered into an express agreement disclaiming any intent to form a trust relationship and where application of a resulting trust cuts directly against ratable distribution.

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**  9 | P a g e

> In Idaho:
>
> A resulting trust arises in two common circumstances: (1) where one party, the trustee, receives title to property even though the purchase price for the property was paid by another party, the beneficiary and (2) where property's legal title is transferred by give or devise and the transferor intends that the done or devisee hold legal title as a trustee for a third party beneficiary to enjoy the property's beneficial interest. *Hettinga v. Sybrandy,* 126 Idaho 467, 886 P.2d 772, 774-75 (Idaho 1994). A party claiming to be a beneficiary of a resulting trust must generally show, by clear, cogent, and convincing evidence, the underlying facts necessary to give rise to a resulting trust. A resulting trust arises in Idaho only where the trust may reasonably be presumed to be the be the parties' intention, as determined from the facts and circumstances existing at the time of the transaction. *Erb v. Kohnke,* 121 Idaho 328, 824 P.2d 903, 910 (Idaho Ct. App. 1992). "[T]he whole doctrine of resulting trusts is founded upon the principle of a presumed intention to create a trust." *Shurrum v. Watts,* 80 Idaho 44, 324 P.2d 380, 385-86 (Idaho 1958)(quoting *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835, 840 (Wash. 1948)). A resulting trust arises by implication of law, and is used to enforce the parties' presumed intent to create a trust. *In re woods,* 386 B.R. at 763 n.9.

*Gugino v. Canyon County (In re Bujak),* 2012 Bankr. LEXIS 3689; Bk Case No. 10-03569-JDP, Adv. Pro. 11-06038-JDP (Bankr. D. Idaho 2012).

A resulting trust, like a constructive trust, is an equitable remedy subject to the same "strict limitations" imposed on constructive trusts in bankruptcy. *Siegel v. FDIC (In re IndyMac Bankcorp Inc.,)* 2012 Bankr. LEXIS 1660, *25 (Bankr. C.D. Cal. 2012). Where the equities militate against imposition of a resulting trust, the bankruptcy court acts properly in declining to exclude funds from the debtor's estate by imposing a resulting trust. *In re Foam Systems Co.,* 92 B.R. 406, 409 (9th Cir. BAP 1988).[7]

---

[7] In *In re Foam Systems Co.,* 92 B.R. 406, 409 (9th Cir.BAP 1988), the 9th Cir. BAP upheld the bankruptcy court's decision declining to exclude funds from a debtor's estate by imposing a resulting trust noting as follows:

> The bankruptcy court concluded that the equities militated against the imposition of a resulting trust. We agree. If the only parties to be considered were Insurance Co. and the debtor, then the equities might favor the imposition of a resulting trust. However, in light of the Bankruptcy Code's strong policy of ratable distribution among all creditors, the bankruptcy court properly declined to exclude the funds in the account from the debtor's estate by imposing

Here, the court need look no further than the Account Agreement which clearly provides that the parties did not intend to create an express trust. *See In re Landamerica Fin. Group, Inc.,* 2009 Bankr. LEXIS 4133 *45 (Bankr. E.D. VA 2009)(noting that the Court need not divine the intent of the parties from the surrounding circumstances where they are readily discernable from the subject Agreements themselves. ) In light of the Archers' agreement alone, they cannot be said to have met the clear and convincing evidence standard required for summary judgment on their claim. Moreover, where the undisputed facts clearly demonstrate that imposition of a resulting trust is inequitable and cuts against pro rata distribution amongst all of the creditors/investors who had similar if not identical relationships with the debtor, the Court, should similar to the bankruptcy court in *In re Foam Systems, Co.,* decline to exclude the Archers' last investment from the debtor's estate.

Here, the undisputed facts show that Allen operated his investment scheme for the better part of a decade raising over $7 million from approximately 70 individuals, including the Archers. (Trustee Aff., Ex. A, Verified Complaint, ¶¶ 3, 6; Miller Aff., ¶ 5.) The investors duped by Allen make up the entire creditor pool in the underlying bankruptcy action all of whom seek to recover their investments and will, under bankruptcy law, have to share in pro-rata distribution of the debtor's estate. (Miller Aff., ¶ 5.) Allen/KA appears to have provided many, if not all of the investors with the same monthly account statement form the Archers received, and simply inserted fictitious balances and returns aimed at reflecting each particular investor's investment

---

a resulting trust. *See In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1419-1420 (9th Cir. 1985) (although equities as between debtor and one group of creditors favored imposition of a constructive trust, court would not impose constructive trust and deprive estate of property which could be distributed to other creditors as well); *In re North American Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir. 1985) (court reluctant to exercise relatively undefined equitable power, the imposition of a constructive trust, in favor of one group of potential creditors at the expense of other creditors, because ratable distribution among all creditors is one of the strongest policies of bankruptcy law.)

balance and promised returns. (Miller Aff., ¶ 6.; Trustee Aff., Ex. A, Verified Complaint, ¶ 12 ("Allen's investors were passive and expected to have no role in earning returns, other than giving Allen money and watching their returns rack up in fake monthly statements.")

With the foregoing in mind, the Archers' resulting trust claim fails based upon their express written agreement agreeing no trust relationship or fiduciary relationship existed. Even absent such express agreement, the Archers' resulting trust claim and their pending motion for summary judgment cannot simply focus on their individual relationship with the debtor. Rather, the inquiry must necessarily take into account the other similarly situated creditors who had similar if not identical relationships with Allen/KA. When the scope of review is properly expanded and all of the underlying facts considered, it is clear that the equities militate against imposition of a resulting trust. Similar to the ruling in *In re Foam Systems, Co.,* 92 B.R. 406, 409 (9th Cir. BAP 1988), in light of the Bankruptcy Code's strong policy of ratable distribution among all creditors, this court should properly decline to exclude the funds in the account from the debtor's estate by imposing a resulting trust.

Accordingly, the motion for summary judgment should be denied.

### D. The Court Should Decline to Employ the Lowest Intermediate Balance Test Because Employing Such a Tracing Fiction is Inequitable.

Lastly, even if the Archers were correct that there existed an express trust or that imposition of a resulting trust is appropriate, the Archers have not and cannot strictly trace their funds.

Specifically Judge Pappas has noted the limitations on Trusts as follows:

> Even if property is held within some sort of trust, if a debtor-trustee fraudulently obtains that property, or converts, embezzles, or otherwise unlawfully takes the property, the property is considered part of the bankruptcy estate, and can only be claimed from the bankruptcy estate if definitely traced by the beneficiary… A party in a bankruptcy proceeding that alleges it is a beneficiary under a trust must

> prove not only the existence of a trust, but also that he has rights to the property. The party must clearly identify to the bankruptcy court the trust funds and sufficiently trace those funds…
>
> When an alleged beneficiary is paid with funds that have been comingled, there is a "strict tracing standard," which requires the beneficiary to trace the alleged trust property specifically and directly back to the property he claims was under the trust. "If [the beneficiary] fails to trace the funds, which must presume that the funds constitute an interest of the debtor in property." *See Taylor Assocs. V. Diamant (In re Advent Mgmt. Corp.),* 104 F.3d 293, 296 (9th Cir. 1997)(quoting *In re Bullion Reserve of N. Am.,* 836 F.2d at 1217, which it interpreted as standing for the proposition that "funds from commingled bank account controlled by debtor presumptively constitute property of debtor's estate")(internal quotations omitted)). *See also Cassirer v. Herskowitz (In re Shick)*, 234 B.R. 337, 343 (Bankr. S.D.N.Y. 1999)("The funds in a commingled account maintained in the debtor's name my be used to pay his unsecured creditors unless a beneficiary can trace his or her superior right to the funds.  Thus the law implies the element of 'control' in the absence of tracing.  Accordingly, the bankruptcy trustee carries her burden of proving that the account was property of the debtor by showing that the debtor had legal title to the account, and the account consists of comingled trust and personal funds.").

*See Gugino v. Canyon County,* Adv. Pro 11-06038-JDP, 2012 Bankr. LEXIS 3689, 2012 WL 3260352 (Bankr. D. Idaho 2011).    Moreover, as quoted by the 9th Circuit, Collier has written:

> "The basic idea of the trust doctrine as applied in bankruptcy is a fair and reasonable identification of the property or fund so as not to harm other creditors. It is not enough, therefore, to show merely that the funds or property came into the bankrupt's hands or went into the bankrupt's business or, by the better view, even that the funds or property are contained somewhere within the bankrupt's estate. If the trust fund or property cannot be identified in its original or substituted form, the *cestui* becomes merely a general creditor of the estate, for the prevailing rule in trusts is that 'a beneficiary who cannot find the trust property has no lien or charge spread over the entire estate of the faithless trustee.'"

*Elliott v. Bumb*, 356 F.2d 749, 754, 1966 U.S. App. LEXIS 7226, *11 (9th Circuit 1966); citing to 4 Collier ¶ 70.25[2], pp. 1216-18 (Citations omitted).

To try to satisfy the strict tracing requirement, the Archers ask the court to employ a tracing fiction known as the lowest intermediate balance test ("LIBT").  In its simplest form, the

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**    13 | P a g e

Archers' position is that because their $182,000 investment was deposited into a general checking account thereby resulting in the balance of that account rising by $182,000.00 they do not have to identify each individual dollar they transferred, but can instead rely upon the temporal proximity of the deposit to the increase in the account balance. Ultimately, the Archers' position is untenable under the unique circumstance of this case which calls "strongly for the principal that "equality is equity." *Cunningham v. Brown,* 265 U.S. 1 (1924).

While the Archers are correct that the debtor's account balance was never dissipated and never fell below their $182,000.00 investment once it was deposited, which is but one factor that courts have used in finding that a party has not properly traced trust property,[8] other courts have looked at the entirety of the funds held by the debtor and where the funds are comprised of funds belonging to similarly situated parties and insufficient to satisfy all claims, tracing is impossible. Stated differently,

> even assuming the existence of a trust relationship, a creditor cannot sufficiently identify or trace the trust res through a commingled fund where the fund is too small to satisfy the claims of similarly situated parties. To do so would allow that claimant to benefit at the expense of those who have equally strong equitable claims to the same fund. Thus, the *Cunningham* line of cases rejects the fictional tracing rule which allows a claimant to trace the trust res through a commingled account. Instead, pro rata distribution will be the rule when necessary to achieve an equitable result. In this circumstance, "Equality is equity".

*In re Lemons & Associates, Inc.*, 67 B.R. 198, 213-214, 1986 Bankr. LEXIS 5285, *48, Bankr. L. Rep. (CCH) P71,624, 16 Collier Bankr. Cas. 2d (MB) 356, 15 Bankr. Ct. Dec. 395.

In *In re Independent Clearing House Co.,* 41 B.R. 985; 1984 Bankr. LEXIS 5258 (Bankr. D. Utah 1984), the Bankruptcy Court addressed the tracing requirement in the context of an attempt to impose a constructive trust and found tracing to present a serious problem where the party asserting a trust, had not endeavored to trace their funds beyond mere deposit with the

---

[8] *See Kupetz v. United States (In re California Trade Technical Schools, Inc.),* 923 F.2d 641, 648 (9th Cir. 1991);

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**          14 | P a g e

debtor and where the subject funds "were not earmarked but commingled when collected with sums deposited by other investors." *Id.,* 1984 Bankr. LEXIS 5258 at 36. The court noted:

> It is well settled that if funds are commingled with the general funds of the debtor and, hence, are unidentifiable, tracing cannot be accomplished and the claimant must assume the status of a general unsecured creditor.

*Id.; citing to Rosenberg v. Arata,* 3 B.C.D. 154, 155 (Bkrtcy. N.D. Tex. 1977) and *Matter of Plazagal International Corp.*, 33 B.R. 47, 48-49 (Bkrtcy. S.D. N.Y. 1983. Thus, it was insufficient to "prove that the trust property went into the general assess of the insolvent estate." *Id.*

Here, the same serious tracing problem identified in *In re Independent Clearing House Co.,* faces the Archers who have done nothing more than to show that their $182,000 was deposited into one of the two general KA checking accounts. The Archers have not endeavored to trace their funds beyond deposit, which the undisputed facts show were immediately comingled with other investor funds. (Miller Aff., ¶ 14, 16-19.) Thus, the Archer's insufficient tracing here is identical to the insufficient tracing noted in *In re Independent Clearing House Co.*

While the Archers seek to employ the LIBT tracing fiction, to satisfy their strict tracing obligations, the 10th Circuit in *In re Foster,* which is factually similar to the case at bar noted that the LIBT tracing fiction should not be used. *See Hill v. Kinzler (In re Foster),* 275 F.3d 924, 927-928, 2001 U.S. App. LEXIS 27194, *6-7, Bankr. L. Rep. (CCH) P78,554, 38 Bankr. Ct. Dec. 236 (10th Cir. Colo. December 26, 2001). In *In re Foster,* the 10th Circuit, faced with a Ponzi investment scheme, noted that the LIBT should not be employed where it would elevate a creditor's claim over other similarly situated creditors. Specifically, the 10th Circuit noted:

> The bankruptcy court failed to consider whether its use of a tracing fiction was equitable in this case. The lowest intermediate balance rule is an equitable fiction that should not be employed where equity does not warrant the result. *See id. See also Ruddle v. Moore,* 134 U.S. App. D.C. 3, 411 F.2d 718, 719 (D.C. Cir.

**MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**     15 | P a g e

> 1969); *In re Lemons & Assoc., Inc.*, 67 B.R. 198, 213-14 (Bankr. D. Nev. 1986). Courts refuse to employ the lowest intermediate balance fiction where the commingled account is comprised largely of funds acquired from other fraud victims. *See Cunningham*, 265 U.S. at 13 ("The rule is useful to work out equity between a wrongdoer and a victim; but when the fund with which the wrongdoer is dealing is made up of the fruits of frauds perpetrated against a myriad [*928] of victims, the case is different."); *In re M & L Bus. Mach. Co.*, 59 F.3d at 1082 ("Absent direct identification of the defrauded funds, it is to the detriment of all similarly situated creditors to favor one defrauded party over another.").
>
> Kinzler cannot directly trace the funds received in the post-petition transfer to the funds he invested and must rely on the judicial tracing fiction to meet the tracing requirement. We recognize that Kinzler transferred funds to Foster immediately prior to the bankruptcy filing and that these funds comprised a significant portion of the balance in Foster's account on the date the bankruptcy petition was filed. Foster, however, deposited the funds into a general account in which he commingled funds received from other investors. All transfers from this account, including the transfer to Kinzler, were comprised of funds received from victims of Foster's fraud.
>
> The Trustee asserts that Foster's creditors are almost exclusively similarly-situated fraud victims. A tracing fiction should not be employed to elevate Kinzler's claim over the claims of other creditors if those creditors are similarly situated. The court did not determine if the other creditors are similarly situated and thus erred in employing the tracing fiction.

*Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 927-928, 2001 U.S. App. LEXIS 27194, *6-7, Bankr. L. Rep. (CCH) P78,554, 38 Bankr. Ct. Dec. 236 (10th Cir. Colo. December 26, 2001).[9]

---

[9] *See SEC v. Loewenson,* 290 F.3d 80, 88-89, 2002 U.S. App. LEXIS 9512, *22-24, 47 U.C.C. Rep. Serv. 2d (Callaghan) 1467 (2nd Cir. 2002) which noted:

> Courts have favored *pro rata* distribution of assets where, as here, the funds of the defrauded victims were commingled and [*89] where victims were similarly situated with respect to their relationship to the defrauders. *See Cunningham v. Brown*, 265 U.S. 1, 13, 68 L. Ed. 873, 44 S. Ct. 424 (1924) (original Ponzi scheme case suspending tracing fiction in context where receivership [**23] fund consisted of money acquired by fraud perpetuated against many victims); *Forex*, 242 F.3d at 331-32 (affirming District Court's approval of *pro rata* distribution plan where party's assets were held by defrauder in segregated accounts); *Commodity Futures Trading Commission v. Topworth International, Ltd.*, 205 F.3d 1107, 1115-16 (9th Cir. 2000) (affirming District Court's approval of *pro rata* distribution plan where assets were commingled); *United States v. 13328 and 13324 State Highway 75 North*, 89 F.3d 551, 553-54 (9th Cir. 1996) ("*Real Property*") (same); *United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996) (affirming District Court's approval of *pro rata* distribution plan even though the majority

Ultimately, the same facts identified by the 10th Circuit in *In re Foster* that made employing the LIBT test inequitable, exist here. Specifically, the Archers, like Kinzler, deposited funds immediately prior to the bankruptcy filing and their funds comprise a large portion of the balance in the debtor's account on the date the bankruptcy petition was filed. (Archer Dec., ¶ 33 and 37; Miller Aff., ¶¶ 15-20.) The Archers' funds, like Kinzler's were deposited into a general account in which they were comingled with funds from other investors and all funds in the account were from victims of the debtor's fraud. (Miller Aff., ¶ 14, 16-17.) Even more egregious to the facts of *In re Foster*, where the creditor pool was almost exclusively similarly situated fraud victims, **all** of the creditors of the debtor's estate are similarly situated fraud victims. (Miller Aff., ¶ 5.)

Ultimately, "equality is equity" and under the circumstances of this case it is improper to employ a tracing fiction such as the LIBT which allows the Archers to benefit at the expense of the other creditors/investors who have similar and equally strong equitable claims to the same fund. Because the fund here is admittedly too small to satisfy the claims of all of the similarly situated creditors, as a matter of law, the Archer's cannot and have not sufficiently traced their funds. Accordingly, summary judgment in favor of the Trustee is appropriate.

IV.    CONCLUSION

---

of funds were traceable to specific claimants); *Elliott*, 953 F.2d at 1569-70 (affirming District Court's approval of *pro rata* distribution plan even though securities were traceable to claimants).

… the use of a *pro rata* distribution has been deemed especially appropriate [**24] for fraud victims of a "Ponzi scheme," *see Cunningham*, 265 U.S. at 7-9 (describing the scheme of Charles Ponzi), in which "earlier investors' returns are generated by the influx of fresh capital from unwitting newcomers rather than through legitimate investment activity." *Credit Bancorp (Plan) I*, 2000 WL 1752979, at *13; *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n.3 (2d Cir. 1995) (describing characteristics of Ponzi schemes). In such a scheme, whether at any given moment a particular customer's assets are traceable is "a result of the merely fortuitous fact that the defrauders spent the money of the other victims first." *Durham*, 86 F.3d at 72 (internal quotation marks omitted).

While the Trustee can sympathize with the Archers' position in this matter; there are also 68 other investors who were similarly wronged and mislead into investing substantial amounts of money with Allen and KA Investments.  Given the Bankruptcy Code's strong policy of ratable distribution among all creditors, the Archers' should not be allowed to improve their position at the expense of other similarly situated creditors merely because they had the fortune/misfortune of investing last.  The Motion for Summary Judgment should be denied.

Dated this 13th day of November, 2018.

      /s/ Lewis N. Stoddard
LEWIS N. STODDARD
Attorney for Trustee

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on 13th day of November 2018, I caused to be served a true copy of the foregoing, by the method indicated below, and addressed to each of the following:

| | |
|---|---|
| Randal J. French<br>RANDAL J. FRENCH, P.C.<br>P.O. Box 836<br>Boise, ID 83701 | ☒ U.S. Mail (w/ documents)<br>☐ Overnight Mail<br>☐ Hand Delivery<br>☐ Facsimile (208) 235-1182<br>☒ ECF/Email<br>    rfrench@rfrenchlaw.net |

                                             /s/ Lewis N. Stoddard

Dated: November 13, 2018