Noah G. Hillen, ISB No. 7690
CHAPTER 7 BANKRUPTCY TRUSTEE
P.O. Box 6538
Boise, Idaho 83707
Telephone (208) 297-5774
Facsimile (208) 297-5224
ngh@hillenlaw.com

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>KA INVESTMENTS, INC.,<br><br>Debtor.<br><br>―――――――――――――――――――<br><br>NOAH HILLEN, as Chapter 7 Trustee of the estate of KA Investments, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC. , a Delaware limited liability company.<br><br>Defendant. | Chapter 7<br><br>Case No. 17-00495-TLM<br><br>Adv. No. _____<br><br>**COMPLAINT** |

COMES NOW, Noah Hillen, as Chapter 7 Trustee ("Trustee") of the consolidated estate of debtor KA Investments, Inc. and non-debtor Rodney D. Allen (collectively the "Debtor"), alleges as follows:

### NATURE OF COMPLAINT

1.)    This Complaint seeks to avoid and recover from Defendant NATIONSTAR MORTGAGE LLC, a Delaware limited liability company ("Nationstar"), all fraudulent transfers of property, and to or for the benefit of Nationstar, from an account owned by the Debtor during

**COMPLAINT - 1**

the four year period prior to the filing of the Debtor's bankruptcy petition pursuant to 11 U.S.C. § 544, 550, and/or applicable state law.

## JURISDICTION, VENUE AND PARTIES

2.) Nationstar is a Delaware Limited Liability Company authorized to do business in Idaho.

3.) Noah Hillen is the chapter 7 trustee ("Trustee") in the bankruptcy case of KA Investments, Inc. ("Debtor"), Case No. 17-00495-TLM filed in the U.S. Bankruptcy Court for the District of Idaho (the "Court").

4.) Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1334 and 157, and Federal Rule of Bankruptcy Procedure 7001, et seq., and the standard order of reference applicable in this District in that this action arises in and relates to the Involuntary Chapter 7 Bankruptcy Case involving KA Investments, Inc., pursuant to an Order for Relief on May 24, 2017, as Bankruptcy Case No. 17-00495-TLM.

5.) This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O) and to the extent that it is determined to be a non-core proceeding that is otherwise related to this bankruptcy case, the non-core matters, if any, are so inextricably linked with core matters that this Court's exercise of jurisdiction is proper.

6.) The Trustee expressly consents to this Court's entry of final decisions, orders, and judgments in this matter.

7.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL ALLEGATIONS

8.) Debtor is a corporation organized under the laws of the State of Idaho since January 25, 2013.

**COMPLAINT - 2**

9.) Rod Allen a/k/a Rodney Allen ("Allen") is the Debtor's principal.

10.) On April 25, 2017 (the "Petition Date") an involuntary petition was filed against Debtor.

11.) On April 28, 2017, Trustee was appointed as the interim Chapter 7 trustee for the bankruptcy estate of Debtor, pending adjudication of an involuntary bankruptcy petition.

12.) On May 24, 2017, the Court entered an Order for Relief in an Involuntary Case granting an order for relief under chapter 7 of the Bankruptcy Code.

13.) On July 13, 2018, the non-debtor estate of Allen was substantively consolidated with the Debtor KA Investments, Inc., *nunc pro tunc* to April 25, 2017 (hereinafter collectively referred to as "Debtor").

A. **The KA Investments Scheme**

14.) Upon information and belief and to the best of the Trustee's knowledge, Allen either individually, through a d/b/a KA Investments and/or KA Investments, Inc., solicited funds from investors starting prior to 2010, though he did not form KA Investments, Inc., until January 25, 2013.

15.) Neither Rod Allen nor KA Investments, Inc., were licensed to sell securities or commodities and their securities were not registered as required by law.

16.) Debtor solicited funds from numerous investors for investment purposes promising returns of around 2% to 3% per month, or annual returns of 24% to 36% annually over the better part of the last decade.

17.) Debtor advised investors that he would pool their money and "trade the market in stock options, S&P 500 futures, DOW futures, NASDAQ futures, oil, gold and the FX [foreign] market currency pairs.

**COMPLAINT - 3**

18.) Debtor also advised his investors that only a portion of their money would be invested at any given time and that all investments would be pulled out of the market at the end of each trading day, thereby avoiding large downturns in the market. Debtor advised investors that he would only take a commission based off of positive returns earned for investors.

19.) Debtor's representations induced investors to invest with him because they expected above average profits from his trading activity which they were led to believe was low risk. Moreover, where commissions were based upon achieving positive investment returns, investors believed that Debtor's commission structure was an incentive for Debtor to succeed.

20.) Debtor did not inform investors that neither Allen, nor KA Investments, Inc. were registered or licensed to sell securities or commodities in the State of Idaho or elsewhere, nor did it advise investors that their funds would be co-mingled together with other investor funds, deposited into general checking accounts, that funds would be used for personal expenses in amounts unrelated to the commission structure promised, or that money from one investor would be used to pay other investors.

21.) Debtor set up multiple bank accounts both in Allen's individual name as well as in the name of his d/b/a KA Investments, as a sole proprietorship.

22.) A bank account was never set up for KA Investments, Inc.

23.) When Debtor received investor funds they were deposited into one of two d/b/a KA Investment accounts where they were comingled all other investor funds. Debtor took no steps and made no effort to maintain individualized investor accounts, to segregate investor funds, or to separately track investor funds or their performance.

24.) Once Investor funds were pooled, they were then freely transferred from the general business accounts to Rod Allen's personal checking accounts and/or savings accounts.

**COMPLAINT - 4**

From there only a portion of investor funds were deposited into two online trading platforms where Debtor incurred substantial losses.

25.) Investor funds not deposited into the online trading platforms were used by Rod Allen to pay for both his own personal expenses, his spouse's personal expenses, as well as marital expenses including but not limited to car payments, credit card payments, household bills, ATM withdraws, and dining expenses.

26.) Similarly, investor funds that were left in the business checking accounts were also spent on similar personal expenses.

27.) Debtor prepared and distributed fake monthly statements t to investors reflecting the promised rates of return, which, as a result, induced many investors to continue to invest additional monies, not to withdraw their investments, and to recommend Debtor's services to other potential investors.

28.) During the four-year period preceding the Petition Date, the Debtor never had sufficient funds to repay investors on their principal investments and distributions to investors were dependent upon new investor money.

29.) Thus, Debtor's operations took on the characteristics of a Ponzi scheme, in which promised returns to old investors and distributions to old investors could only be satisfied by the flow of funds from the new investors.

30.) To that end, no corporate formalities were followed and funds were transferred, invested, spent, and/or distributed without consideration or documentation.

31.) Monthly statements and any investment distributions did not reflect actual value or actual investment performance, but were designed to comply with promised returns and investor expectations and by generating cash flow from new investors.

**COMPLAINT - 5**

32.) Debtor was able to create and promote the false impression of financial strength and trading knowledge notwithstanding that the Debtor was insolvent.

33.) When investors' wished to withdraw any portion of their investments, Debtor would pay them from whatever cash it had on hand, regardless of the source of those funds so as to perpetuate the illusion that investor money could be safely withdrawn at any time.

34.) According to a recent Verified Complaint filed by the State of Idaho, Department of Finance, Securities Bureau, by April 2017, Allen had gathered somewhere between $6,893,268.00 and $7,617,623.19 in investor funds and returned somewhere between $2,028,479.00 and $2,544,655.34 back to investors, leaving between $4,864,789.00 and $5,072,967.85 unaccounted for. According to the Complaint, Allen converted nearly $2,900,000.00 of investor money for his own personal use.

### B. The Transferor's Insolvency

35.) The Debtor was insolvent using traditional accounting standards and tests.

36.) Debtor was also insolvent as a matter of law by virtue of the fraudulent scheme.

37.) At the time the Transfers (defined below) were made, the Debtor, was insolvent at a fair valuation, such that the sum of Debtor's debts was greater than all of Debtor's assets.

38.) At the time the Transfers (defined below) were made, the Debtor was engaged in a business or transaction for which any remaining property with the Debtor was an unreasonably small amount of capital.

### C. The Transfers to Nationstar

39.) Upon information and belief, Nationstar was not an investor in the Debtor's investment scheme.

40.) Debtor's banking records indicate that between July 18, 2013 and October 7, 2015

**COMPLAINT - 6**

(the "Four Year Period") Nationstar received 26 payments (the "Transfers") from the Debtor's accounts totaling $22,306.36, as follows:

| Date of Transfer | Payment Amount |
|---|---|
| 7/18/2013 | $855.83 |
| 9/17/2013 | $1,621.25 |
| 11/1/2013 | $789.90 |
| 12/4/2013 | $799.85 |
| 1/9/2014 | $789.90 |
| 2/6/2014 | $789.90 |
| 3/5/2014 | $789.90 |
| 4/10/2014 | $846.03 |
| 5/9/2014 | $846.03 |
| 6/11/2014 | $846.03 |
| 7/8/2014 | $846.03 |
| 8/12/2014 | $846.03 |
| 9/11/2014 | $846.03 |
| 10/8/2014 | $846.03 |
| 11/12/2014 | $846.03 |
| 12/10/2014 | $846.03 |
| 1/13/2015 | $855.98 |
| 2/10/2015 | $846.03 |
| 3/9/2015 | $846.03 |
| 4/9/2015 | $815.36 |
| 5/7/2015 | $815.36 |
| 6/9/2015 | $815.36 |
| 7/9/2015 | $815.36 |
| 8/11/2015 | $815.36 |
| 9/9/2015 | $815.36 |
| 10/7/2015 | $815.36 |
| | |
| Total | $22,306.36 |

41.)    On March 19, 2019, Trustee served a subpoena on Nationstar requesting all documents, related to or associated with, the Transfers.

42.)    On April 3, 2019, Nationstar responded to the subpoena and indicated it was unable to identify any documents responsive to the subpoena.

/ / /

**COMPLAINT - 7**

# COUNT I
## AVOIDANCE AND RECOVERY OF THE FOUR YEAR TRANSFERS AS CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO IDAHO CODE. §§ 55-913, 55-914, 55-916, AND 55-917 AND 11 U.S.C. § 544(b), 548(a)(1)(B), 550, AND 551

43.) Trustee restates and incorporates herein by reference the allegations contained in the paragraphs above.

44.) The Debtor was insolvent as that term is defined under Idaho Code § 55-911 during the Four Year Period.

45.) The Debtor received less than reasonably equivalent value in exchange for the Transfers.

46.) The Debtor received no value in exchange for the Transfers.

47.) The Transfers were made while the Debtor was engaged, or about to engage, in a business or a transaction for which the Debtor's remaining assets were unreasonably small in relation to its business or transactions.

48.) The Debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due as a result of the Four Year Transfers.

49.) An unsecured creditor existed at the time of or after the Transfers, who holds a claim that is allowable under Bankruptcy Code section 502 and who, under non-bankruptcy law, could have avoided the Four Year Transfers, at least in part.

50.) Michael Falash was an unsecured creditor during the Four Year Period who holds a claim that is allowable under Bankruptcy Code section 502 and who, under non-bankruptcy law, could have avoided the Four Year Transfers, at least in part.

51.) The Transfers were fraudulent transfers in violation of Idaho Code § 55-913(b) as to present and future creditors.

52.) Nationstar is the initial transferee of the Transfers.

**COMPLAINT - 8**

53.) Nationstar has not returned any of the Transfers to the Debtor's estate.

54.) Trustee is entitled to a judgment pursuant to Idaho Code § 55-913(b), 55-916, and 55-917, and Bankruptcy Code §§ 544(b), 550 and 551: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from Nationstar for the benefit of the Debtor's estate.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests that this Court grant judgment as follows:

A. Judgment under Count I that Debtor's transfer of $22,306.36 to Nationstar constituted a fraudulent conveyance that may be avoided by the Trustee pursuant to 11 U.S.C. § 544(b), Idaho Code §§ 55-913, 55-914, 55-916, and 55-917.

B. Judgment under Count I that Trustee may recover $22,306.36 from Nationstar pursuant to 11 U.S.C. § 550(a).

C. Judgment under Count I that Trustee may preserve the Transfers for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

D. Judgment directing and ordering that Nationstar to surrender to Trustee $22,306.36, forth with, pursuant to 11 U.S.C. § 550.

E. Awarding Judgment for costs for bringing the instant action, including costs allowed under LBR 7054.1 and pre-judgment and post-judgment interest;

F. Any and all other relief the Court deems appropriate.

Dated this 23rd day of April, 2019

/s/ Noah Hillen\_\_\_\_\_
Chapter 7 Trustee

**COMPLAINT - 9**