**B1040 (FORM 1040) (12/15)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Noah Hillen, Chapter 7 Trustee | DEFENDANTS<br>Andrew and Nicole Pontius |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Lewis N. Stoddard<br>13125 W. Persimmon Ln. St. 150<br>Boise, ID 83713  619-326-2404 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  □ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  ☒ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Fraudulent transfer - 11 USC § 544(b), Idaho Code §§ 55-913, 55-914, 55-916, and 55-917.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
[1] 12-Recovery of money/property - §547 preference
[2] 13-Recovery of money/property - §548 fraudulent transfer
[3] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> KA Investments, Inc | BANKRUPTCY CASE NO.<br> 17-00495-TLM | |
| DISTRICT IN WHICH CASE IS PENDING<br> Idaho | DIVISION OFFICE<br>Boise | NAME OF JUDGE<br>Hon. Terry L. Myers |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br> /s/ Lewis N. Stoddard | | |
| DATE<br><br>April 24, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br> Lewis N. Stoddard | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Lewis N. Stoddard, ISB No. 7766
ALDRIDGE PITE, LLP
13125 W. Persimmon Lane, Suite 150
Boise, ID 83713
Telephone: (619) 326-2404
Fax: (858) 726-6254
lstoddard@aldridgepite.com

Attorney for Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>KA INVESTMENTS, INC.<br><br>                    Debtor<br><br>_____<br><br>NOAH HILLEN, as Chapter 7 Trustee of the estate of KA Investments, Inc.,<br><br>        Plaintiff<br><br>vs.<br><br>ANDREW PONTIUS, an individual; NICOLE PONTIUS, an individual; and John Doe 1-10.<br><br>        Defendant. | Chapter 7<br><br>Case No. 17-00495-TLM<br><br><br>Adv. No. _____<br><br>**COMPLAINT** |

COMES NOW, Noah Hillen, as Chapter 7 Trustee ("Trustee") of the consolidated estate

of debtor KA Investments, Inc. and non-debtor Rodney D. Allen (collectively the "Debtor"), by

and through his attorney of record, Lewis N. Stoddard and alleges as follows:

**<u>NATURE OF COMPLAINT</u>**

**1.)**     This Complaint seeks to avoid and recover from Defendants Andrew Pontius and

Nicole Pontius ("Pontius"), or from any other person or entity for whose benefit the transfers

**COMPLAINT - 1**

were made, all fraudulent transfers of property,  and to or for the benefit of Pontius, from an

account owned by the Debtors during the four year period prior ot the filing of the Debtor's

bankruptcy petition pursuant to 11 U.S.C. § 544, 547(b), 550, and/or applicable state law.

### JURISDICTION, VENUE AND PARTIES

2.)     Andrew Pontius and Nicole Pontius ("Pontius"), are married individuals believed

to be residents of Boise, Ada County, Idaho. Andrew Pontius is believed to be the adult son of

Roberta Leatham, wife of Rodney Allen.

3.)     Noah Hillen is the chapter 7 trustee ("Trustee") in the bankruptcy case of KA

Investments, Inc. ("Debtor"), Case No. 17-00495-TLM filed in the U.S. Bankruptcy Court for

the District of Idaho (the "Court").

4.)     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1334 and 157, and

Federal Rule of Bankruptcy Procedure 7001, et seq., and the standard order of reference

applicable in this District in that this action arises in and relates to the Involuntary Chapter 7

Bankruptcy Case involving KA Investments, Inc., pursuant to an Order for Relief on May 24,

2017, as Bankruptcy Case No. 17-00495-TLM.

5.)     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H)

and (O) and to the extent that it is determined to be a non-core proceeding that is otherwise

related to this bankruptcy case, the non-core matters, if any, are so inextricably linked with core

matters that this Court's exercise of jurisdiction is proper.

6.)     The Trustee expressly consents to this Court's entry of final decisions, orders, and

judgments in this matter.

7.)     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**COMPLAINT - 2**

## GENERAL ALLEGATIONS

8.)      KA Investments, Inc., is a corporation organized under the laws of the State of
Idaho since January 25, 2013.

9.)      Rod Allen a/k/a Rodney Allen ("Allen") is the Debtor's principal.

10.)      On April 25, 2017 (the "Petition Date") an involuntary petition was filed against
KA Investments, Inc.

11.)      On April 28, 2017, Trustee was appointed as the interim Chapter 7 trustee for the
bankruptcy estate of KA Investments, Inc., pending adjudication of an involuntary bankruptcy
petition.

12.)      On May 24, 2017, an Order for Relief in an Involuntary Case under chapter 7 of
the Bankruptcy Code was entered.

13.)      On July 13, 2018, the non-debtor estate of Allen was substantively consolidated
with the Debtor KA Investments, Inc., *nunc pro tunc* to April 25, 2017 (hereinafter collectively
referred to as "Debtor").

### A.  The KA Investments Scheme

14.)      Upon information and belief and to the best of the Trustee's knowledge, Allen
either individually, through a d/b/a KA Investments and/or KA Investments, Inc., solicited funds
from investors starting prior to 2010, though he did not form KA Investments, Inc., until January
25, 2013.

15.)      Neither Rod Allen nor KA Investments, Inc., were licensed to sell securities or
commodities and their securities were not registered as required by law.

16.)      Debtor solicited funds from numerous investors for investment purposes
promising returns of around 2% to 3% per month, or annual returns of 24% to 36% annually over

COMPLAINT - 3

the better part of the last decade.

17.)    Debtor advised investors that he would pool their money and "trade the market in stock options, S&P 500 futures, DOW futures, NASDAQ futures, oil, gold and the FX [foreign] market currency pairs."  Debtor also advised his investors that only a portion of their money would be invested at any given time and that all investments would be pulled out of the market at the end of each trading day, thereby avoiding large downturns in the market. Debtor advised investors that he would only take a commission based off of positive returns earned for investors.

18.)    Debtor's representations induced investors to invest with him because they expected above average profits from his trading activity which they were led to believe was low risk.  Moreover, where commissions were based upon achieving positive investment returns, investors believed that Debtor's commission structure was an incentive for Debtor to succeed.

19.)    Debtor did not inform investors that neither Allen, nor KA Investments, Inc. were registered or licensed to sell securities or commodities in the State of Idaho or elsewhere, nor did it advise investors that their funds would be co-mingled together with other investor funds, deposited into general checking accounts, that funds would be used for personal expenses in amounts unrelated to the commission structure promised, or that money from one investor would be used to pay other investors.

20.)    Ultimately, Debtor set up multiple bank accounts both in Allen's individual name as well as in the name of his d/b/a KA Investments, as a sole proprietorship.  Ultimately, a bank account was never set up for KA Investments, Inc.

21.)    When Debtor received investor funds they were deposited into one of two d/b/a KA Investment accounts where they were comingled all other investor funds.  Debtor took no steps and made no effort to maintain individualized investor accounts, to segregate investor

**COMPLAINT - 4**

funds, or to separately track investor funds or their performance.

22.)   Once Investor funds were pooled, they were then freely transferred from the general business accounts to Rod Allen's personal checking accounts and/or savings accounts. From there only a portion of investor funds were deposited into two online trading platforms where Debtor incurred substantial losses.

23.)   Investor funds not deposited into the online trading platforms were used by Rod Allen to pay for both his own personal expenses, his spouse's personal expenses, as well as marital expenses including but not limited to mortgage payments, car payments, credit card payments, household bills, ATM withdraws, and dining expenses.

24.)   Similarly, investor funds that were left in the business checking accounts were also spent on similar personal expenses.

25.)   Debtor prepared and distributed fake monthly statements which were distributed to investors reflecting the promised rates of return which, as a result, induced many investors to continue to invest additional monies, not to withdraw their investments, and/or to recommend Debtor's services to other potential investors.  Beyond preparing and distributing fake monthly account statements to Investors, Debtor took no measures to separate or segregate investor funds, or to separately account for or track investor funds.

26.)   During the four-year period preceding the Petition Date, the Debtor never had sufficient funds to repay investors on their principal investments and distributions to investors were dependent upon new investor money. Thus, Debtor's operations took on the characteristics of a Ponzi scheme, in which promised returns to old investors and distributions to old investors could only be satisfied by the flow of funds from the new investors.  To that end, no corporate formalities were followed and funds were transferred, invested, spent, and/or distributed without

**COMPLAINT - 5**

consideration or documentation.  Monthly statements and any investment distributions did not reflect actual value or actual investment performance, but were designed to comply with promised returns and investor expectations and by generating cash flow from new investors, the Debtor was able to create and promote the false impression of financial strength and trading knowledge notwithstanding that the Debtor was insolvent at the time.

27.)    When investors' wished to withdraw any portion of their investments, Debtor would pay them from whatever cash it had on hand, regardless of the source of those funds so as to perpetuate the illusion that investor money could be safely withdrawn at any time.

28.)    According to a recent Verified Complaint filed by the State of Idaho, Department of Finance, Securities Bureau, by April 2017, Allen had gathered somewhere between $6,893,268.00 and $7,617,623.19 in investor funds and returned somewhere between $2,028,479.00 and $2,544,655.34 back to investors leaving between $4,864,789.00 and $5,072,967.85 unaccounted for.  According to the Complaint, Allen converted nearly $2,900,000.00 of investor money for his own personal use.

## B.  The Transferor's Insolvency

29.)    The Debtor was insolvent using traditional accounting standards and tests.

30.)    Debtor was also insolvent as a matter of law by virtue of the fraudulent scheme.

31.)    At the time the Fraudulent Transfers were made, the Debtor, and in particular Allen and KA Investments, Inc., were insolvent at a fair valuation, such that the sum of their debts was greater than all of their property.

32.)    At the time the Fraudulent Transfers were made, the Debtor, and in particular Allen and KA Investments, Inc., were engaged in a business or transaction for which any remaining property with the Debtor was an unreasonably small capital.

**COMPLAINT - 6**

## C.  The Transfers to Defendants

33.)    Upon information and belief, Pontius invested funds with the Debtor for investment purposes and received payments as a result of the investment.  Specifically, Debtor's records indicate that Pontius invested $20,000 which was deposited into Debtor's accounts on November 15, 2016.

34.)    Debtor's records indicate that Pontius received a check in the amount of $22,251.00 dated February 27, 2017, which was cashed.

35.)    In addition to the foregoing payment, Debtor's records indicate that Chris Pontius also received payments from Debtor in the total amount of $5,450.00 (the "Four Year Transfers"), during the four year period before the Petition Date, that is from April 25, 2013 through and including April 25, 2017 (the "Four Year Period) as follows:

| Date of Transfer: | Payment Amount: |
| --- | --- |
| October 11, 2013 | $400.00 |
| December 31,2013 | $100.00 |
| December 31, 2013 | $450.00 |
| February 24, 2015 | $3,500.00 |
| February 29, 2016 | $1,000.00 |

36.)    On November 1, 2018, Trustee made a demand upon Pontius for return of the payment for $22,251.00 dated February 27, 2017 pursuant to § 547(b).

37.)    Pontius refused Trustee's demand.

### COUNT I - 11 U.S.C. §§ 547(b), 550(a), 551
### Preferential Transfer/Recovery/Preservation

38.)    Trustee re-alleges and incorporates by reference all of the allegations set forth in above.

39.)    In November 2016, Pontius invested $20,000.00 with Debtor for the purpose of

**COMPLAINT - 7**

obtaining a return on the investment.

40.)    Debtor's records show that a check was issued to Pontius dated February 27, 2017 in the amount of $22,251.00, which Pontius cashed on February 28, 2017 (the "Transfer").

41.)    At the time of the Transfer, the Debtor had an interest in the $20,000.

42.)    The Transfer was made for the benefit of the Pontius.

43.)    At the time of the Transfer, Pontius were creditors of the Debtor.

44.)    The Transfer was made on account of an antecedent debt owed by the Debtor to Pontius prior to the Transfer.

45.)    Debtor was insolvent at the time of the Transfer.

46.)    The Transfer occurred within 90 days of the Petition Date.

47.)    Debtor was presumed insolvent at the time of the Transfer, as the Transfer occurred within 90 days of the Petition Date.

48.)    The Transfer allowed Pontius to receive more than they would have in a Chapter 7 liquidation had the Transfer not been made.

49.)    Pursuant to 11 U.S.C. § 550(a)(1), Pontius was the initial transferee of the Transfer.

50.)    Trustee may avoid the Transfer, recover funds transferred to Pontius and preserve the avoided and recovered Transfer for the benefit of the bankruptcy estate.

## COUNT II
### AVOIDANCE AND RECOVERY OF THE FOUR YEAR TRANSFERS AS CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO IDAHO CODE ANN. §§ 55-913, 55-914, 55-916, AND 55-917 AND 11 U.S.C. § 544(B), 548, 550, AND 551

51.)    The Plaintiff restates and incorporates herein by reference the allegations contained in the paragraphs above.

52.)    The Debtor was insolvent as that term is defined under Idaho Code Ann. § 55-911

**COMPLAINT - 8**

during the Four Year Period.

53.)   The Debtor received less than reasonably equivalent value in exchange for the Four Year Transfers.

54.)   The Four Year Transfers were made while the Debtor was engaged, or about to engage, in a business or a transaction for which the Debtor's remaining assets were unreasonably small in relation to its business or transactions and were made to an insider.

55.)   The Debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due as a result of the Four Year Transfers.

56.)   An unsecured creditor existed at the time of or after the Four Year Transfers who holds a claim that is allowable under Bankruptcy Code section 502 and who, under non-bankruptcy law, could have avoided the Four Year Transfers, at least in part.

57.)   The Four Year Transfers were fraudulent transfers in violation of Idaho Code § 55-913(b) as to present and future creditors.

58.)   Defendants are either the initial transferee of the Four Year Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Four Year Transfers were made.

59.)   As of the date hereof, Defendants have not returned any of the Four Year Transfers to the Debtor's estate.

60.)   By reason of the foregoing, Plaintiff is entitled to a judgment pursuant to Idaho Code § 55-913(b), 55-916, and 55-917, and Bankruptcy Code §§ 544(b), 550 and 551: (i) avoiding and preserving the Four Year Transfers; (ii) directing that the Four Year Transfers be set aside; and (iii) recovering the Four Year Transfers, or the value thereof, from Defendant(s) for he benefit of the Debtors' estates.

**COMPLAINT - 9**

## COUNT III
## UNJUST ENRICHMENT

61.)    Plaintiff reasserts all of the allegations in the foregoing paragraphs of this Complaint as if more fully set forth herein.

62.)    Defendants were enriched as a result of receiving the Four Year Transfers described in this Complaint by receiving something of value that belonged to Plaintiff.

63.)    These enrichments violate equity and good conscience.

64.)    These enrichments did not result from enforceable agreements between Plaintiff and Defendant.

65.)    By reason of the foregoing, Defendants should be compelled by this Court to make restitution to Plaintiff in the amount of the Four Year Transfers.

## RESERVATION OF RIGHTS

66.)    During the course of this adversary proceeding, Plaintiff may learn through discovery or otherwise of additional transfers made by the Debtor to Defendant, or for the benefit of Defendants that were unknown to Plaintiff as of the date of this Complaint (the "Additional Transfers").

67.)    Plaintiff intends to avoid and recover all transfers made by the Debtor of an interest of the Debtors in property and to or for he benefit of Defendants or any other transferee. Plaintiff reserves its right to supplement and amend the allegations contained in this Complaint, including but not limited to, the right to (i) allege further information regarding the Four Year Transfers, (ii) allege Additional Transfers, (iii) make modifications of and/or revision to Defendants names(s), (iv) allege additional defendants, and/or (v) allege additional causes of action arising under sections 542, 544, 545, 547, 548 and 549 of the Bankruptcy Code (collectively, the "Amendments"), that may become known to Plaintiff at any time during this

**COMPLAINT - 10**

adversary proceeding through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint. By reason of the foregoing, Defendants should be compelled by this Court to make restitution to Plaintiff in the amount of the Four Year Transfers.

68.)     To the extent that Defendants have filed a proof of claim or have a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or have otherwise requested payment from the Debtor, or it's estate, this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to section 502 of the Bankruptcy Code, and all such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief pursuant to section 502(d) of the Bankruptcy Code is sought by this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully requests that this Court grant judgment as follows:

A.       Judgment under Count I that the Transfer constituted a preferential transfer of an interest of the Debtor in property that may be avoided by the Trustee pursuant to 11 U.S.C. § 547(b).

B.       Judgment under Count I that Trustee may recover the value of the Transferred funds from Defendants pursuant to 11 U.S.C. § 550(a).

C.       Judgment under Count I that Trustee may preserve the Transfer for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

D.       Judgment under Counts II and III declaring that the Four Year Transfers are avoided and set aside as fraudulent transfers pursuant to section 544 and 548 of the Bankruptcy Code and applicable state law;

**COMPLAINT - 11**

E.      Directly and ordering that any transfers avoided pursuant to sections 544, 548, and applicable state law be preserved for the benefit of the Debtor's estate pursuant to 551 of the Bankruptcy Code;

F.      Directing and ordering that each Defendant, or any immediate or mediate transferee of each Defendant, turnover to Plaintiff the full amount of or value of the Four Year Transfer received by such Defendant, or any immediate or mediate transferee of such Defendant pursuant to section 550 of the Bankruptcy Code;

G.      Awarding Judgment for costs for bringing the instant action, including costs allowed under LBR 7054.1 and pre-judgment and post-judgment interest;

H.      Compelling each Defendant to make restitution to the Plaintiff in the amount that they were unjustly enriched by the Four Year Transfers; and

I.      Any and all other relief the Court deems appropriate.

Dated this April 23, 2019


_____/s/ Lewis N. Stoddard_____
LEWIS N. STODDARD
Attorney for Trustee


**COMPLAINT - 12**